**J.H. McQUISTON, Pro Se**
McQUISTON ASSOCIATES
6212 Yucca Street
Los Angeles, California 90028
Telephone: (323) 464-4792
Facsimile:  (323) 464-4792

NOV 1 8 2011

FILED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.H. McQUISTON, | **CASE NO. CV11-05149-DSF(MRW)** |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGES AND WRIT OF MANDATE** |
| vs. | |
| **CITY OF LOS ANGELES**, a Charter City; **ANTONIO VILLARAIGOSA**, Mayor; **MARGARET C. FIELDS**, Property Owner; **OCCIDENTAL ENTERTAINMENT GROUP HOLDINGS,** a California Corporation, Property Lessee & Sublessor; **COMMUNITY INVESTMENT HOLDINGS. INC.** a California Corporation, Property Sublessee, dba **'THE ZONE'; SHAUN BUTLER**, an Individual; **RENEE WEITZER**, City Employee**; LINN K. WYATT**, City Employee; **ED P. REYES**, City Councilmember; **PAUL KREKORIAN**, City Councilmember | **[42 USC §1983; CALIFORNIA CODE OF CIVIL PROCEDURE §1094.5]** |
| **Defendants.** | |

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

# I.

## INTRODUCTION & SUMMARY OF CLAIMS

1. **PLAINTIFF J.H. McQUISTON**, for himself alone and for no others, brings this action to enforce the fair, equal, and lawful application by defendant **CITY** of the exercise of its police powers as they pertain to the application and execution of the City's zoning laws. Specifically, Plaintiff seeks the invalidation of a land use action which granted defendant **COMMUNITY INVESTMENT HOLDINGS, INC.**, dba `THE ZONE' (acting by and through Defendant **SHAUN BUTLER**) an unlawful `variance' respecting the use of the real property located at 1037 North Sycamore Avenue; which action failed to advance **any** legitimate governmental purpose, and is so arbitrary and irrational that it runs afoul of the Due Process and Equal Protection clauses of the United States Constitution. Plaintiff further asserts that the City Officers and Employees named herein misused their governmental powers, acted outside the scope of their authority, and failed to discharge their mandatory duties under the Los Angeles City Charter and implementing Ordinances, all of which led to the City's unreasonable, arbitrary, unlawful, capricious, and illegitimate grant of the subject unlawful `variance'; which impermissibly has allowed the use of the real property owned by defendant **MARGARET FIELDS**, leased to defendant **OCCIDENTAL ENTERTAIN-MENT GROUP HOLDINGS, INC.**, and sub-leased to defendant **COMMUNITY INVESTMENT HOLDINGS, INC.** as a sexual encounter establishment as defined in LAMC §12.70 B 12 in violation of the City's zoning laws. Plaintiff contends this unlawful, arbitrary, capricious, unreasonable, and irrational action allowing defendant **BUTLER** a special privilege to engage in a prohibited use violated plaintiff's rights to equality of restrictive zone requirements mandated by Federal, State, and local law. Plaintiff brings this action under and pursuant to 42 USC §1983, 42 USC §1985(3), and the Equal Protection and Due Process Clauses

///_____

of the 14th Amendment to the US Constitution. Plaintiff seeks (i) to enjoin the City from arbitrarily bestowing such unlawful special privileges; (ii) a Declaration that the conduct of the City was unlawful, that its officers and employees acted outside the scope of their prescribed responsibilities, (iii) an Order that the business be directed to remove itself from the 1037 North Sycamore Avenue location to a location whose zoning contemplates and permits such use; (iv) an award of damages incurred by plaintiff occasioned by such unlawful use; and (v) an award of damages to plaintiff caused by the `temporary taking' of plaintiff's property rights by said defendants.

2. In addition, plaintiff asserts a pendent state law claim against defendants **CITY OF LOS ANGELES, MARGARET C. FIELDS, OCCIDENTAL ENTERTAINMENT GROUP HOLDiNGS, INC., COMMUNITY INVESTMENT HOLDINGS, INC**. and **SHAUN BUTLER** under California Code of Civil Procedure (CCP)§1094.5, asking this Court to order defendant **CITY** to vacate and set aside its decision granting the unlawful `variance' permitting defendants **COMMUNITY INVESTMENT HOLDINGS, INC** and **SHAUN BUTLER** to operate a 'sexual encounter establishment' on the 1037 North Sycamore Avenue property in contravention of the City's "MR-1" zone and the laws of the State of California. Plaintiff's right of action under CCP §1094.5 is based on the contention that defendant **CITY** proceeded without and in excess of its lawful jurisdiction, abused its discretion, and acted prejudicially, arbitrarily, and capriciously by, among other things, granting the subject variance for a use prohibited by law and not allowable by variance, and papering over its prohibited use grant without the requisite, competent evidentiary support and the legally mandated `findings' proscribed by Section 562 of the Los Angeles City Charter, Los Angeles Municipal Code §12.27, Government Code §65906, and *Topanga Association vs. County of Los Angeles* (1974)11 Cal 3d 506 (mandating that the analytic gap between the raw evidence and the ultimate decision be `bridged').

3. Plaintiff's claim against the City's officers and employees is based on the contention that no discretion was permissible under the facts and law; the acts of said employees and officers were and are unlawful, conspiratorial `ultra-vires', outside the scope of their lawful authority, arbitrary, unwarranted, and corrupt; that said defendants, although purporting to act under color of state and local law, were advised beforehand, and thus knew that their action in granting the `variance' could not withstand rational-based scrutiny; that the so~called 'Findings' in support of the `variance' were insubstantial as a matter of law and were undertaken on Defendants' behalf by an insider `lobbyist' who manipulated the system and thereby succeeded in enabling the non-City defendants to obtain a special privilege and economic advantage to the direct prejudice of plaintiff. The evidence will show that the City's officials' and employees' affirmative action to grant an unlawful variance was based on an irrational, unsubstantiated, legally insufficient, capricious and unsupportable deference to defendant **RENEE WEITZER**; that such conduct by the defendants, and each of them acting in concert, under color of state law, and as to the City employees and officials outside the scope of their duties, deprived plaintiff of his right to the `honest services' of the City employees and City Officials named herein; for which they are therefore personally liable in damages as a direct and proximate result of said unlawful, ultra-vires actions, all as alleged in greater detail below.

## II.

## JUR1SDICTION AND VENUE

4. This Court has subject-matter jurisdiction of the Federal claims pursuant to 28 USC §§l331 and 1343. This Court has jurisdiction of the pendent state claims (Writ of Mandate Claim for Relief) against defendant **CITY** and the defendant property owners, and business operators (real pathes in interest in the pendent Writ~ Proceeding, as specified) under 28 USC §1367

5. Plaintiff's federal claims arise under 42 USC § 1983 (deprivation of

1   plaintiff's rights, privileges and immunities secured by the US Constitution and
2   laws); 42 Usc §1985(3) (conspiracy to violate plaintiff's civil rights); and
3   Amendments V and XIV of the United States Constitution (violation of plaintiff's
4   rights, to substantive due process and equal protection). Plaintiff's state claims arise
5   under (a) Government Code §65852 (prohibiting `spot zoning'); (b) Government
6   Code §65860(d) (prohibiting any use inconsistent with the use allowed under a
7   zoning ordinance); (c) Government Code §65906 (prohibiting the grant of any
8   variance which allows for a use which is inconsistent with the underlying zoning,
9   which otherwise would create a special privilege); (d) §562 of the Charter of the
10  City of Los Angeles (which implements Government Code §65906 and specifically
11  precludes the granting of a vaiiance for any core land use (i) which is inconsistent
12  with the use lawfully allowed under the Zoning Code, and (ii) which constitutes a
13  special privilege); (e) Los Angeles Municipal Code (LAMC) § 1 2.27D (which
14  implements Government Code §65906 and Charter §562); (f) Los Angeles
15  Municipal Code § 12.17.5 (specifying the restricted land uses permitted in the
16  "MR-1" Restricted Industrial Zone at issue); (g) Los Angeles Municipal Code
17  § I2.24W(l 8) (which precludes the granting of a Conditional Use Permit in the
18  "MR-I" Restricted Industrial Zone); (h) LAMC § 12.70C (which prohibits any
19  person from causing or permitting the continued operation, maintenance, or use of
20  lot, building, or structure, on **FIELDS'** property at issue for a `sexual encounter
21  establishment' after March 16, 1988; and (i) state case law interpreting the
22  foregoing sections and which also sets forth the lawful substantive and procedural
23  due process protocol to be implemented in connection with the *quasi-judicial*
24  administrative-review of variance applications, all as more specifically set out in the
25  opinion of the California Supreme Court in *Topanga Association for a Scenic*
26  *Community vs. County of Los Angeles* (1974) 11 Cal. 3d 506 ('*Topanga*');
27  *Broadway Laguna etc. Asso'n vs. Board of Permit Appeals* (1967) 67 Cal. 2d 767
28  (`*Broadway*'); and the Court of Appeal decision in *West Chandler Blvd*

1 | *Neighborhood Association vs. City of Los Angeles* (2011) 198 Cal App. 4th 1506

2 | (*West Chandler*).

3 |     6. Venue properly lies in this Court pursuant to 28 USC §1391.

4 | **III.**

5 | **PARTIES**

6 |     7. Plaintiff **J.H. McQUISTON** (hereinafter `Plaintiff') is an individual who

7 | owns the real property located at 1035 North Orange Drive, Los Angeles,

8 | California. 90038. Said real property lies within an area zoned `MR-1'(which is a

9 | zoning designation enacted by the City of Los Angeles restricting the use of all

10 | properties lying within its boundaries to the specified industrial uses set out in

11 | §1217.5 of the Los Angeles Municipal Code, a true and correct copy of which is

12 | attached hereto as Exhibit `D' and incorporated herein by reference).

13 |     8. Defendant **CITY OF LOS ANGELES** (hereinafter "**CITY**") is now, and

14 | at all times herein relevant, a Charter City organized under the laws of the State

15 | of California, possessed of the power to regulate land uses within its boundaries as

16 | proscribed by the provisions of the Charter of the City of Los Angeles and the laws

17 | of the State of California.

18 |     9. Defendant **ANTONIO VILLARAIGOSA** (hereinafter "**MAYOR**") is

19 | the elected Mayor of the City of Los Angeles, bound by the oath to which he

20 | subscribed as set out in §215 of the Los Angeles City Charter, which oath directs

21 | him to support the Constitution of the United States, the California Constitution,

22 | the Charter of the City of Los Angeles, and to "faithfully discharge the duties of the

23 | Office of Mayor". On March 21,2011, said defendant could have vetoed the action

24 | of the Los Angeles City Council when the Council ratified the unlawful, capricious

25 | and illegitimate acts of the Zoning Administrator and defendant Councilmembers

26 | and Staff in proposing to grant the illegitimate and unlawful `variance' to defendant

27 | **COMMUNITY INVESTMENT HOLDINGS** and **SHAUN BUTLER**, as alleged

28 | herein; but instead he approved of the grant of said variance, which, for the reasons

1 │ cited below, wrongfully permits to use and maintain a `sexual encounter estab-

2 │ lishment' at the real property located at 1037 North Sycamore Avenue, Los Angeles,

3 │ California 90028.

4 │        10. Defendant **MARGARET C. FIELDS** (hereinafter `**FIELDS'**) is an

5 │ individual who, at all times herein relevant, was and is the owner of the subject real

6 │ property located at 1037 North Sycamore Avenue, Los Angeles, California 90028.

7 │ Said property is zoned "MR-1" and is located within 500 feet of the plaintiffs

8 │ property. Plaintiff contends that **FIELDS** has received and continues to receive a

9 │ larger financial benefit by virtue of the unlawful `variance' improperly granted by

10 │ defendant **CITY**, as more fully alleged herein.

11 │        11. Defendant **OCCIDENTAL ENTERTAINMENT GROUP HOLDINGS**

12 │ (hereinafter "**OCCIDENTAL**") at all times herein relevant was and is a corporation

13 │ existing under and pursuant to the laws of the State of California. Said defendant

14 │ is the tenant of defendant **FIELDS**.

15 │        12. Defendant **COMMUNITY INVESTMENT HOLDINGS, INC.**

16 │ (hereinafter "**HOLDINGS**") is now, and at all times herein relevant was, a

17 │ corporation existing under and pursuant to the laws of the state of California.

18 │ **HOLDINGS** is the sub-lessee of defendant **OCCIDENTAL. HOLDINGS** operates

19 │ the 'sexual encounter establishment' (as defined in LAMC §12.70 B (12)) at the

20 │ 1037 North Sycamore Avenue property under the fictitious business name of `**THE**

21 │ **ZONE'** with the consent of **FIELDS**. The general nature of the business activities

22 │ being conducted at the 1037 North Sycamore Street property are delineated in

23 │ Exhibit "E", a document entitled "The Zone...Membership Application." A true and

24 │ correct copy of Exhibit "E" is attached hereto and incorporated herein by reference.

25 │        13. Defendant **SHAUN BUTLER** (hereinafter "**BUTLER**") purports to be

26 │ the President of defendant **HOLDINGS**. Said defendant was also the `Vice-

27 │ President' of National Club Management, Inc., who plaintiff is informed and

28 │ believes, and thereon alleges, was the predecessor-in-interest to defendant

1  **HOLDINGS**. Prior to the **OCCIDENTAL/HOLDINGS** sub-lease coming into
2  existence, plaintiff is informed and believes that National Club Management, Inc.
3  operated the identical `sexual encounter establishment' at the 1037 North Sycamore
4  Avenue property which is being operated today by defendant **HOLDINGS**.
5  Plaintiff further affirmatively-alleges that in seeking and procuring the `variance'
6  at issue in this litigation, defendant **BUTLER** represented, in writing and under
7  oath, to the City defendants and the public that he was at all times authorized to act
8  for and on behalf of defendants **FIELDS** and **OCCIDENTAL** in connection with
9  the procuring of said `variance'.

10      14. Defendant **RENEE WE1TZER** (hereinafter `**WEITZER**') is now, and
11  at all times herein relevant was an employee of the City of Los Angeles, acting as
12  Planning Director to LA City Councilmember Tom LaBonge, who represents
13  Council District 4, wherein the plaintiff's and **FIELDS'** properties lie.

14      15. Defendant **LINN K. WYATT** (hereinafter `**WYATT**') is now, and at all
15  times herein relevant was, employed by defendant **CITY** as a Zoning Administrator
16  in the City's Planning Department. As more-fully alleged below, plaintiff contends
17  that said defendant acted outside the scope of her authority, under color of state law
18  and in concert with the other defendants, to impermissibly grant the subject
19  `unlawful' variance to defendants **HOLDINGS** and **BUTLER**.

20      16. Defendant **ED P REYES** (hereinafter "**REYES**") is now, and at all
21  times herein relevant was, the elected Councilmember for Council District 1.
22  Defendant REYES is bound by the same oath required of the Mayor under §215 of
23  the Los Angeles City Charter to support the Constitution of the United States, the
24  California Constitution, the Charter of the City of Los Angeles, and to "faithfully
25  discharge the duties of Councilmember". As more fully alleged below, defendant
26  REYES was and is Chairman of the Planning and Land Use Committee (`PLUM')
27  of the Los Angeles City Council, and presided over the PLUM meeting at which
28  Plaintiff's appeal of the improvident, capricious, and unlawful `variance' granted to

1  defendants **HOLDINGS** and **BUTLER** was heard; and who moved to support the
2  **CITY's** granting of said unlawful `variance' to defendants **HOLDINGS** and
3  **BUTLER**, solely on the basis of the arbitrary, capricious, unjustified, and pretextual
4  request of defendant **WEITZER**, which action plaintiff alleges constituted an abuse
5  of his power, a breach of his oath and duties to the people, and an act outside the
6  scope of his lawful power as Councilmember.

7      17. Defendant **PAUL KREKORIAN** (hereinafter "**KREKORIAN**") is now,
8  and at all times herein relevant was the elected Councilmember for Council District
9  2. Defendant **KREKORIAN** is also bound by the same oath required of defendants
10 MAYOR and REYES under §215 of the Los Angeles City Charter to support the
11 Constitution of the United States, the California Constitution, the Charter of the
12 City of Los Angeles, and to "faithfully discharge the duties of Councilmember". As
13 more fully alleged below, defendant **KREKORIAN** was and is a member of PLUM
14 and whose presence fulfilled the quorum-requirement of two on the day plaintiff's
15 appeal of the unlawful `variance' grant was heard; and who voted to support the
16 unlawful `variance' on the basis that defendant **WE1TZER** requested the same;
17 when said defendant knew by advisement that no lawful basis existed to grant the
18 `variance'; that the request for the `variance' was arbitrary, capricious, legally and
19 factually unjustified and unsupportable based on the exercise of any degree of
20 discretion; and that as such, said conduct constituted a violation of his oath of
21 office, his duties to the people of Los Angeles, and outside the scope of his
22 authorized powers as Councilmember.

23                                    **IV.**
24 **GENERAL LAND USE PROTOCOL REGARDING ZONING VARIANCES**
25      18. "Whereas, the adoption of zoning regulations is a legislative function
26 (Government Code §65850), the granting of variances is a *quasi-judicial*,
27 administrative one [citations]. If the judiciary were to review grants of variances
28 superticially, administrative boards could subvert this intended decision-making

1 structure [citation]. They could "amend the zoning code in the guise of a variance
2 [citation] and render meaningless applicable state and local legislation prescribing
3 variance requirements. Moreover, [reviewers] must meaningfully review grants of
4 variances to ***protect the interests of those who hold rights in projects nearby*** the
5 parcel for which the variance is sought. A zoning scheme... is similar in some
6 respects to a contract; each party foregoes rights to use its land as it wishes in return
7 for the ***assurance that the use of the neighboring property will be similarly***
8 ***restricted***, the rationale being that such mutual restriction can enhance total
9 community welfare [citations]. ***If the interest of these parties in preventing***
10 ***unjustified variance awards is not sufficiently protected, the consequence will be***
11 ***subversion of the critical reciprocity upon which zoning regulation rests...***"
12 *Topanga, supra*, at pages517-518.
13    19. The essence of a `variance' is to ensure that all properties within a given
14 designated zone are treated equally as required by the 14th Amendment to the
15 United States Constitution. When special circumstances attendant to a particular
16 property such as size, topography, shape, location, or surroundings deprive such a
17 property of the same use privileges enjoyed by other properties within a given zone
18 in a *manner otherwise authorized by the zoning classification*, California law
19 mandates that a variance from the zoning law be granted so that equal enjoyment of
20 uses for all property owners within a given zone is ensured. A `variance' is thus to
21 ensure equality, not to sanction, justify, or permit unequal privilege by unauthorized
22 exceptions not available to others owning land within the subject zone. This core
23 principle is codified in California Government Code §65906, which mandates
24 as follows:
25    "Variances from the terms of the zoning ordinances shall be granted ***only***
26 ***when***, because of special circumstances applicable to the property, including size,
27 shape, topography, location or surroundings, the strict application of the zoning
28 ordinance ***deprives such property of privileges enjoyed by other property in the***

1   *vicinity and under the identical zoning classification*.

2      "Any variance granted shall be subject to such conditions as will assure that

3   *the adjustment thereby authorized shall not constitute a grant of special privileges*

4   inconsistent with the limitations upon other properties in the vicinity and zone in

5   which such property is situated.

6      "*A variance shall not be granted for a parcel or property which authorizes a use*

7   *or activity which is not otherwise expressly authorized by the zone regulation*

8   *covering the parcel of property*." (Emphasis Added).

9          22. In establishing zoning laws, Government Code §65852 mandates that

10  "all such [zoning] regulations shall be *uniform* for each class or kind of building or

11  use of land *throughout each zone*; but the regulation in one zone may differ from

12  those in other types of zones." (Emphasis added) Therefore, to be noted is that

13  `variances' are only to be granted to enable a property owner to make use of his

14  property in a manner consistent with the uses in the zoning classification.

15         23. Granting a 'variance' in a given circumstance is distinguishable from

16  issuing a `conditional use permit' A `conditional use permit' authorizes an explicit

17  use *subject to enumerated conditions* for explicit zones, because otherwise they

18  pose a threat to the protection of the broader public health, safety, and welfare.

19  To be entitled, a 'conditional use permit' for use and zone must be contained in §

20  12.24, but MR1-zoned parcels not being included for the subject use **a conditional-**

21  **use approach is unavailable and cannot substitute for a zone change.**

22  onal use pennit'1A~s not a substitute for a zoning `variance'.

23                                  **V.**

24

25  **THE CITY'S IMPLEMENTATION OF THE STATE MANDATED ZONING**

26  **PROTOCOL REGARDING THE GRANTING OF ZONING VARIANCES**

27         24. §562 of the Los Angeles City Charter implements the mandate of

28  Government Code §65906 with regard to the grant of land use variances. In relevant

1 | part it states as follows:

2 | "(c) **Findings for Granting a Variance**. The following findings shall be

3 | made before a variance can be granted:

4 | "(1) That the strict application of the provisions of the zoning ordinance would

5 | result in practical difficulties or unnecessary hardships inconsistent with the general

6 | purposes and intent of the zoning regulations;

7 | "(2) that there are special circumstances applicable to the subject property such as

8 | size, shape, topography, location or surroundings that do not apply generally to other

9 | property in the same zone and vicinity;

10 | "(3) that the variance is necessary for the preservation and enjoyment of a

11 | *substantial property right or use generally possessed by other property* in the same

12 | zone and vicinity but which, because of special circumstances and practical

13 | difficulties or unnecessary hardships, is denied to the property in question;

14 | "(4) that the granting of the variance will not be materially detrimental to the

15 | public welfare, or injurious to the property or improvements in the same zone or

16 | vicinity in which the property is located; and

17 | "(5) that the granting of the variance will not adversely affect any element of

18 | the General Plan.

19 | "The grant of a variance may include conditions that will remedy a **disparity of**

20 | **privileges** and that are necessary to protect the public health, safety, or welfare

21 | and *assure compliance with the objectives of the General Plan and the purpose*

22 | *and intent of the zoning ordinance. A variance shall not be used to grant a special*

23 | *privilege or to permit a use substantially-inconsistent with the limitations upon*

24 | *other properties in the same zone and vicinity*. The Zoning Administrator may deny

25 | a variance if the conditions creating the need for the variance were self-imposed."

26 | (Emphasis added)

27 | 25. LAMC §12.27 implements the mandate of §562 of the Los Angeles City

28 | Charter. It requires a formal application (§12.27A), the submission of evidence to

1   be heard by a Zoning Administrator with written notice to be given to the public
2   within 500 feet (§§ 12.27 B and C). The decision on whether to grant or deny the
3   variance must be supported by written findings based on the documentary evidence,
4   oral testimony, and written declarations submitted in support or opposition,
5   including staff reports (§12.27D). The mandates of Charter §562 and Government
6   Code §65906 that no variance may be granted if the intended use is not authorized
7   under the underlying zoning classification, or if granting the variance would confer
8   a special privilege on the property beyond the normal privileges accorded other
9   properties contained within the same geographical boundaries of the given zone
10  (§12.27D ). Records of all appeals from a Zoning Administrator's decision about the
11  grant or denial of a zoning variance, whether heard by the relevant Planning
12  Commissioners or the City Council, must consist solely of the record that was before
13  the Zoning Administrator and any arguments presented to the Appellate Body (§
14  12.27K). Reversal or modification of the Zoning Administrator's decision can only
15  occur if the Zoning Administrator either erred or abused discretion.(§ I 2.27L; *West*
16  *Chandler Blvd Neighborhood Association vs. City of Los Angeles* (2011) 198 CaL
17  App. 4th 1506). Decisions of a Planning Commission which grant a variance, or
18  affirm the grant of a variance, may be appealed to the Los Angeles City CounciL
19  (§12.27 O). The Council may act ***administratively,*** to affirm reverse or modify the
20  variance, subject further to formal approval or rejection by the Mayor plus 2/3
21  override capability by the Council (§12.27 P).

22                                            **VI.**
23              **THE PROCEEDINGS ATTENDANT TO THE VARIANCE**
24                      **GENERAL BACKGROUND FACTS**
25        26. The real property owned by plaintiff is located at 1035 North Orange
26  Drive, Los Angeles, California 90038, The property owned by defendant **FIELDS**
27  which is the subject of the illegal variance grant is located at 1037 north Sycamore
28  Avenue, Los Angeles, California 90038. Both properties are located in an area of

1  Los Angeles lying within the "MR-1" Zoning Classification. Attached hereto as

2  Exhibit 'A' and incorporated herein by reference is a true and correct copy of the

3  Zoning Plot Plan Map (with legend attached) published by the Los Angeles

4  Planning Department which depicts the relative locations of Plaintiffs Orange

5  Drive property, the defendants' Sycamore Avenue property, and the Zoning.

6      26. At all times herein relevant, it has been the strong policy of the City of

7  Los Angeles to maintain a strong Industrial sector, for it is within industrial-zoned

8  areas where employment opportunities for residents of all skills and education

9  levels are provided. The General Plan Framework states that the City must "actively

10  ensure that the City has sufficient quantities of land suitable to accommodate

11  existing, new and relocating industrial firms." It also limits the conversion of

12  existing industrial land to other land uses to avoid creating "a fragmented pattern of

13  development [that] reduces the integrity and viability of existing industrial areas."

14  (Section 7.2.11 -General Plan Framework (1996, 2001).

15      27. According to the Southern California Association of Governments,

16  commercially-zoned property in Los Angeles is worth eight (8) times the worth of

17  industrially-zoned property. "Use-flippers" buy industrial property, "flip" it to

18  commercial use, and sell at an enormous profit. SCAG further notes that industrial

19  property, per unit of acre, attracts more and higher-paying jobs but demands less City

20  services than does commercial property; the economic welfare of the City is injured

21  when industrial property `flips' to commercial use.

22      28. It was this broad policy objective which caused the City of Los Angeles, in

23  1976, to create the "MR-I" Restricted Industrial Zone which, by Ordinance, was

24  applied to plaintiff's property, **FIELDS'** property, and the other adjacent properties

25  noted on exhibit "A". The Zoning Ordinance which specifies the criteria and

26  restricted uses for all properties lying within the "MR-1" zone is LAMC §12.17.5.

27  The ***purpose is stated in*** §12.17.6 A as follows:

28   "I. To protect industrial land for industrial use, and ***prohibit unrelated commercial***

1  *and other non-industrial uses;*

2     "2. To provide a reasonable range of interim uses in this zone, so that land

3  owners may receive income from temporary use, while the industrial land reserve is

4  being protected for future growth;

5     "3. To upgrade industrial development standards;

6        (a) so that industry will be a better neighbor to residences.

7        (b) *to protect industrial investment against incompatible residential,*

8           *commercial and industrial uses,* and

9        (c) to prevent future industrial blight;

10     "4. *To preserve industrial land* for light industrial uses and to provide for

11  non-retail businesses which *enhance the City's employment base*.

12     "5, To reflect and accommodate the shift in industrial and land use from

13  traditional industrial activity to uses such as those involving record management,

14  research and development, information processing, electronic technology, and

15  medical research." (Emphasis added)

16     29. By definition, a "sexual encounter establishment" of the type operated by

17  defendants **HOLDINGS** and **BUTLER** is not permitted in the "MR-I" zone. By

18  Notice to Comply the Department of Building & Safety as use-arbiter served its

19  disapproval of 'sexual-encounter' use to defendant FIELDS' predecessor-owner. To

20  permit such use requires the property to be relocated and also rezoned, per LAMC

21  §12.70 C. None of the defendants had the power to do that. Consequently, granting

22  a variance *in situ* was and is unauthorized, unlawful, capricious, and arbitrary; giving

23  said defendants a special privilege not possessed by plaintiff nor by all other

24  property-owners in the zoning-area.

25     30. LAMC § 12.24 W 8(c) permits the Zoning Administrator to grant conditional

26  use permits to allow for the operation of 'sexual encounter establishments' (as

27  defined in LAMC § 12.70B(12) as a 'conditional use', but permits are only allowed

28  in "C2", "CS", "CM", "MI", "M2", or "M3" zones. By that specific inclusion, use in

1  "MR-I" zone is excluded. Excluded from receiving a 'zone variance', defendants
2  HOLDINGS and BUTLER are also precluded from obtaining a conditional use
3  permit to operate their `sexual encounter establishment' at the 1035 North Sycamore
4  Avenue property.

5  ## THE SPECIFIC VARIANCE PROCEEDINGS INVOLVING
6  ## THE 1035 NORTH SYCAMORE AVENUE PROPERTY

7  31. LAMC § 1 2.70C states in relevant part as follows:
8  "C. Prohibition. . . After March 6, 1988 no person shall *cause or permit* the
9  continued operation, maintenance or use of a lot, building or structure, or any portion
10 thereof, as . . . .[a] 'sexual encounter establishment', within 500 feet of any lot in an
11 ~ within the "CR". "CI". or "C1$"!
12 wires in the City of Los Angeles.." (Emphasis Added).
13 32. The subject property on which defendants **BUTLER** and **HOLDINGS**
14 applied to operate their 'sexual encounter establishment' lies within 500 ft of a lot
15 zoned "R", which is North of Santa MonIca Blvd. on Sycamore Avenue. No lawful
16 alternative exists by which defendants **BUTLER** and **HOLDINGS** may operate a
17 `sexual encounter establishment' except to locate elsewhere, and although there has
18 been ample time for them to locate a new venue they apparently have not done so.
19 Instead, they chose to collude with City personnel so they may operate in property
20 where they are prohibited and where they block a legal concern or concerns from
21 locating.
22 33. On July 28, 2009, an un-advertised and surreptitious "pseudo-variance"
23 for a "National Club Management, Inc" run by Officers Peter Deep, applicant, and
24 **SHAUN BUTLER, "Vice President"**, became null and void by its "terms". Its
25 **subject was the 'sexual encounter establishment'** situated on defendant **FIELDS'**
26 property at 1037 North Sycamore. **On February 2, 2010,** defendant **SHAUN**
27 **BUTLER,** now claiming to be head of **HOLDINGS,** finally filed an application for
28 a **new variance for the identical use on the identical property,** but for a new

1  sublessee-operator. **BUTLER's application also ignored its Code-deficient on-site**
2  **parking and lack of offsite parking-availability. Defendant BUTLER attested**
3  **under penalty of perjury that he signed the application with the authority and**
4  **consent of owner FIELDS.**

5     34. At the hearing July 15, 2010 most of the allowed testimony was given by a
6  Planning Dcpartment employee, who took testimony and evidence at a prior session,
7  a paid "variance expediter" for defendants **BUTLER** and **HOLDINGS**, a
8  professional "variance expediter" for defendant **FIELDS**, and a few police from the
9  Vice Squad who had surveyed the inside of **FIELD's** building while it was not in
10 operation. Defendant **WYATT** would not permit others much time to make their
11 case. **FIELDS'** representative testified for the record that CD4 according to
12 defendant **WEITZER wanted the variance approved.**

13    35. Plaintiff not only submitted brief to defendants **WYATT** and **WEITZER**,
14 with points and authorities and pointing out the reasons why the City has no
15 discretion whatsoever to grant a use variance on the FIELDS' property, and why
16 doing so would violate state and local law, but also cautioned both regarding their
17 personal liability to him for their commission of constitutional torts as a direct and
18 proximate if they abused their power by allowing the **FIELDS'** property to be used
19 in a manner contrary to the zoning classification.

20    36. On August 10, 2010, defendant **WYATT**, acting under color of state and
21 local law, wrongfully approved the variance without addressing the use-prohibitions
22 heretofore listed in paragraphs 21, 22, 24, 25, 28, 29, 30 and 31, but solely based her
23 approval on the five criteria subsidiary to the use-issue threshold.  Her factual
24 findings, conclusions, and considerations, to be further put in evidence and analyzed
25 at the proper moment, of course could not be and were not legally significant,
26 relevant, or controlling under the holdings of *Broadway* and *Topanga* to the
27 determination of whether defendants **HOLDINGS** or **BUTLER** were entitled to a
28 `variance':

1    **Wyatt Finding #1: That the strict application of the zoning code as regards**
2    **the proposed use as a `sexual encounter establishnient' would result in practical**
3    **difficulties or unnecessaiyhardships inconsistent with the general purposes and**
4    **intent of the zoning regulations.**
5    This holding could not legally be made because for the reasons above 'sexual
6    encounter establishments' are not allowed in the "MR-1" (Restricted Industrial) zone
7    `by right'. Since the primary purpose and intent of the zoning regulation in this
8    instance is to preserve and encourage industrial use, and to prohibit non-related
9    commercial uses, and operating commercial `sexual encounter establishments' is not
10   a permitted industrial use, it was not logically possible for **HOLDINGS** or
11   **BUTLER** to encounter any `practical difficulties' or `unnecessary hardships' other
12   properties similarly zoned in the area would not also encounter in such a use. There
13   was no discretion whatever given to defendant WYATT under the law to make a
14   Finding favorable to Butler, and she was legally-required to deny **BUTLER's**
15   application.
16        Additionally, no evidence was given that the alleged "private club" open to
17   anyone with $2 for admission, was "private" and "compatible with other adjacent
18   approved and lawful land uses.
19   **Wyatt Finding #2: That there are special circumstances applicable to the 1037**
20   **North Sycamore Avenue property such as size, shape, topography, location or**
21   **sunoundings that do not apply generally to other property in the same zone or**
22   **vicinity.**
23   No such evidence reflective of any unique physical characteristics of the subject
24   property not also possessed b adjacent and similarly-zoned properties was presented
25   upon which defendant **WYATT** could legally- conclude that the FIELDS property
26   was distinguishable from all other local properties. The quality of `uniqueness' upon
27   which defendant WYATT relied related solely to the fact that the operating hours
28   proposed by defendants **HOLDINGS** and **BUTLER** were at night, claiming no

1  others operated at night. This was false logic, used solely as a phony pretext to grant

2  the variance when under the law, the quality of 'uniqueness' as used in the context

3  of the law's clear intended application, relates solely to the property's physical

4  characteristics. The operating hours of a business to be conducted on a property is

5  not, by any definition, a 'property characteristic'.

6  Accordingly, by granting the 'variance' to defendants HOLDINGS and BUTLER

7  defendant WYATT unlawfully gave said defendants a **special privilege** not enjoyed

8  by plaintiff nor other adjacent property owners in the MR-1 Zone.

9      **Wyatt Finding #3: That the variance is necessary for the preservation and**

10  **enjoyment of a substantial property right or use generally possessed by other**

11  **property in the same zone and vicinity but which, because of special**

12  **circumstances and practical difficulties or unnecessary hardships, is denied to**

13  **the 1037 North Sycamore Avenue property.**

14  There is no other 'sexual encounter establishment' in this MR-1 zone. Since 1976,

15  no 'sexual encounter establishment' is permitted in the MR-1 zone. However, there

16  are 'sexual encounter establishments' in Los Angeles, in zones permitting such use.

17  There is no substantial property right to be preserved for **FIELDS'** property, **except**

18  **for its use for industrial purposes as set forth in LAMC §12.17.5.** Defen-dants

19  **HOLDINGS** and  again defendant WYATT was intellectually

20  dishonest in 'finding' that this condition was satisfied even though there is no other

21  sexual encounter establishment in the vicinity, that none of the non-City defendants

22  possess any right' to use the 1037 North Sycamore Avenue property as a 'sexual

23  encounter establishment', and that defendants **HOLDINGS** and **BUTLER** possess

24  no 'substantial' property right to make use of this property as a sexual encounter

25  establishment in the MR-1 Zone (even if it were not within 500' of a property zoned

26  'R'). That a series of businesses got away with thumbing noses at law doesn't mean

27  they developed a "right to be a lawbreaker" that deserves to be protected. **To the**

28  **contrary, Plaintiff has a substantial right not to have his property trashed,**

1  **defaced, broken and broken-into by persons attracted to the unlawful use sited**
2  **at 1037 Sycamore.** It is the one that is eligible for preserving.
3  **Wyatt Finding 4: That the granting of the variance will not be materially**
4  **detrimental to the public welfare, or injurious to the property or improvements**
5  **in the same zone or vicinity in which the property is located.**
6  Plaintiff produced at the hearings documentary, pictorial, and oral evidence attesting
7  to the fact that patrons of the sexual encounter establishment had over the years
8  sprayed graffiti on plaintiff's property and building, committed sex acts behind
9  plaintiffs building, urinated and defecated on the side of plaintiff's building, and
10  left condom wrappers emblazoned with the logo `ZONE' due in part to unimpeded
11  access between plaintiff's property and the 1037 North Sycamore Avenue property
12  **mandated by the CITY on plaintiff as a safety-item.**
13  If the City fails itself to follow its own law, State law, and Federal law openly and
14  with notice by the public, the City breeds contempt for law and fosters scofflaws
15  among its public.
16  Both of the above are **materially-detrimental to public welfare.**
17  In her finding #4 defendant WYATT inserted four paragraphs. The first addressed
18  longevity of operation and noise, traffic, and aesthetics. These are of no legal
19  importance regarding this Finding. The second paragraph addressed the applicant's
20  assertion that it will "police" the premises, implying that the operation **does affect**
21  **the public welfare.** The third paragraph addresses the applicant's promise to operate
22  without notice in the area, but it was shown that the operation does affect those
23  properties in the area which comply with current City codes; applicant has not shown
24  that the future operation will not equally affect the surrounds. The fourth paragraph
25  asserts that the operator has been conscious of the potential and actual harm the
26  operation can cause to other properties. Despite a mere promise to be a responsible
27  member of the area, the operator's patently-unlawful commercial-use and its denial
28  of operating space for a lawfully-entitled industrial user belies the operator's

1  statements and promises.

2      Thus the Administrator could not in good conscience make this Finding to

3  favor the applicant.

4  **Wyatt Finding 5: That the granting of the variance will not adversely affect any**

5  **element of the General Plan.**

6  §65350, Calif Government Code, permits the City to divide its required General Plan

7  into segments, of which its Hollywood Plan ('Plan') is one segment.

8  Hollywood's Media Industry is a major component of the City's economy. To be

9  successful, it requires a substantial amount of industrial area for its operation.

10 Because it is in Hollywood, it attracts torist dollars to Hollywood.

11 The industrial preserve in Hollywood is very small and overcrowded. Some of the

12 industry even resorts to "bootlegging" space in adjacent residential zoning for their

13 businesses. The vacancy rate is below 2 percent.

14 The FIELDS parcel is thus an essential piece now missing from this industrial pool

15 and the Plan is thereby injured.

16 WYATT's two-paragraph set of excuses for taking away critically-needed industrial

17 property ignored the damage the variance and continued unlawful "occupation" has

18 caused the Hollywood Plan. **It did not lawfully state a reason entitling the**

19 **variance.**

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27

28

1  **WYATT** are evident by the fact, noted above, that the policy imbedded in the
2  Framework Element of the General Plan is to encourage and preserve industrial
3  uses, not fragment, de facto 'spot zone' and piecemeal industrially zoned properties
4  so that individual property users can gain a financial advantage over other property
5  owners within the industrial zone.

6  Moreover, in none of the 'Findings', did defendant **WYATT** make any of the
7  "Findings" mandated by *Topanga* and *West Chander* which describe how she was
8  able to bridge the analytical gap between her conclusions and the evidence.

9  In short, the 'Findings' of defendant **WYATT**, made under color of law, are
10  a sham; are arbitrary, and are unlawful. They reflect her failure to faithfully
11  discharge her mandatory duties under the LA City Charter and implementing
12  ordinances, as well as state law, and constitute actions outside the scope of her
13  lawful authority.

14  ### THE CENTRAL AREA PLANNING COMMISSION HEARING

15  37. Plaintiff timely appealed the decision of Defendant **WYATT** to the
16  Central Area Planning Commission, which heard plaintiff's appeal on November 9,
17  2010. Under the provisions of LAMC §27K, the Area Planning Commission can
18  only consider the official record that was before the Zoning Administrator. Any
19  new evidence which could not have been presented to the Zoning Administrator and
20  which might lead to a different result can only be introduced to the Zoning
21  Administrator after a mandatory remand. Otherwise, the Central Area Planning
22  Commission may only consider matters already in the record, together with any oral
23  or written arguments presented to the Commission. Plaintiff submitted 45 pages of
24  facts already in the record which clearly demonstrated why the Commission had no
25  discretion under the law other than to deny the variance.

26  38. The Central Area Planning Commission nonetheless denied the appeal
27  and adopted the erroneous and legally tainted findings of defendant **WYATT**.

28

- 22 -

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

1

## THE CITY COUNCIL APPEAL

2    39.  Thereafter, plaintiff timely appealed to the City Council on December

3    20, 2010. In his appeal, plaintiff contended that his appeal should be granted and the

4    granting of the variance reversed for the following nine reasons, among others:

5        A.  The subject property was lawfully used under the MR-1 Zoning

6    Restriction since 1976 until 1993, before the **CITY** unlawfully allowed defendant

7    **FIELDS** and her tenants to use the property as a 'sex encounter establishment';

8        B.  There is no 'grandfathered' ('deemed conditional') use which would

9    allow the defendants **HOLDINGS** and **BUTLER** to use of the subject property as

10   a 'sexual encounter establishment';

11       C. The defendants **BUTLER** and **HOLDINGS** had been using the property

12   unlawfully; the use was cited several times for their improper use, but never

13   requested timely relief, which could only come in the form of a rezoning of the

14   property;

15       D. In 1994, defendant **WEITZER**, on her own initiative, but in concert with

16   literally commanded that a variance be issued,  even though said defendant knew

17   that under the law, the **CITY** could not lawfully issue a variance;

18       E.  To grant the variance was to deny plaintiff the equal protection of the law

19   because it gave the non-**CITY** defendants a special privilege not enjoyed by other

20   property owners whose property lay within the boundaries of the MR-1 Zone,

21   thereby leading to an unfair financial windfall for the non-**CITY** defendants and

22   undermining the value of plaintiff's property;

23       F.  Defendant **WYATT** had abused her discretion and committed an error in

24   law in granting the variance because the findings (a) failed to incorporate a clear

25   analytical bridge which closed the gap between the raw evidence and her

26   conclusions; (b) the Findings were legally deficient for the reasons noted above; (c)

27   defendant **WYATT** had made erroneous factual assertions that the prior variance

28

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

1  requests (ZA 1999-299ZV and ZA 1992-1196ZA)  had *extended* the use as a lawful

2  non-MR-1 business; (d) use for commercial purpose under the policy goals of the

3  General Plan to preserve industrial land;

4      G. Defendant **WYATT**, in her faulty analysis had falsely and incorrectly

5  used the zoning term 'limited industrial' (M) to describe the zoning classification

6  when the correct term was 'restricted' industrial' (MR). The difference is

7  significant because neither a variance, nor a conditional use permit for a sexual

8  encounter business is permitted in the 'restricted' industrial MR-1 Zone; whereas a

9  conditional use for a sexual encounter business is permitted in a 'limited industrial

10  zone' per LAMC§12.24W18(c);

11      H. The Administrator's grant of the unlawful variance was particularly

12  disparate and unfair given the fact that the City had prohibited plaintiff from

13  impeding the path from the outside of the property's rear wall to the street. The City

14  enabled the patrons of defendants' sexual encounter business to trespass on

15  plaintiff's property, paint graffiti, deposit trash and used condom and condom

16  wrappers along the path which the **CITY** mandated plaintiff leave open;

17      I. Assistance calls by plaintiff to LAPD were unanswered; nor could the

18  Business Improvement Association's Security Force stop the damages to the

19  plaintiff's property.

20      40.  Plaintiff thereafter submitted substantial material to PLUM which heard

21  Plaintiff's appeal on February 15, 2011. In support of his appeal, Plaintiff also

22  presented written points and authorities citing Defendant **WYATT'S** errors of law

23  and abuse of discretion, including defendant **WYATT'S** improper refusal to apply

24  the criteria of *Topanga* and *Broadway* to the facts of this case.

25      41.  Defendant **WEITZER** appeared at the PLUM Committee hearing and

26  repeated her prior testimony before the Central Area Planning Commission, which

27  ended with a request for the PLUM Committee to approve the variance request 'on

28

1    behalf' of her Councilmember-boss, Tom LaBonge. . She said she knew the use

2    belonged in a "C" Zone, but she wanted it in a "MR-1" Zone anyway.

3         42.  Even though plaintiff was the appellant, defendant **WYATT** was given

4    the opportunity to speak at length.  Plaintiff then was given only 10 minutes to

5    present his detailed appeal.

6         43.  Thereafter, the well-known "zoning expediter" got to testify again at

7    length in support of the variance after disclaiming her connection to defendants

8    **BUTLER** and **HOLDINGS**.

9         44. In further support of the appeal, defendant **OCCIDENTAL** submitted a

10   copy of its letter dated October 10, 2010, to the Area Planning Commission in

11   which **OCCIDENTAL** claimed that it was the lessee and sub-lessor of the subject

12   property; asserting further that its tenant was a model tenant in the neighborhood,

13   and that it supported the granting of the variance because defendants **BUTLER** and

14   **HOLDINGS** "were operating a lawful business", and that it was the Courts, rather

15   than the City Council, which were the appropriate venue for resolution of plaintiff's

16   appeal. That letter was accompanied by a cover letter to the City Clerk signed by

17   Craig Darian on behalf of defendant **OCCIDENTAL** reiterating the belief that the

18   decision of defendant **WYATT** was "well reasoned and mindful of the underlying

19   fcats and related law that attends to this matter".

20        45.  Plaintiff's request for rebuttal time to respond was denied by defendant

21   **REYES**; whereupon defendant **REYES** orally gave Council District 4 what it

22   wanted when he moved to grant the variance and deny plaintiff's appeal, based on

23   defendant **WEITZER'S** request.

24        46. On or about March 1, 2011, prior to the vote in Council, plaintiff served

25   by facsimile on the Mayor, Councilmembers, City Attorney, Chief Administrative

26   Officer, Chief Legislative Analyst and Council Clerk a statement in support of his

27   appeal entitled "New and  Unlawful Variance for Commercial Use in Zone

28

- 25 -                    Case No. CV11-05149-DSF(MSW)
                          First Amended Complaint

Restricted to Industrial Use", putting defendant **CITY** on notice that if commercial use was actually legitimate in the zone, then plaintiff was defrauded in the sum of at $11,858,062 on account of the repressive and 'fraudulent' zoning.

47. Thereafter, the matter was heard in Council on March 9, 2011, on consent. Plaintiff asked if he could speak and was denied. Defendant **WEITZER'S** Councilmember-boss, Tom LaBonge, was absent from the chamber and did not vote until after the matter had been heard and voted on by the full council. The third member of the PLUM Committee, lawyer-Councilmember Jose Huizar, was absent form both the PLUM Meeting and the Council hearing. The matter passed with a bare quorum of 10 present.

48. Plaintiff also submitted a written claim in the sum of $342,670.00 on account of losses incurred as a direct and proximate result of the improvident, illegal, and unlawful grant of a variance to the non-**CITY** defendants, and the CITY'S mandate to have plaintiff's property unprotected therefrom.

49. On March 21, 2011, defendant **MAYOR** approved the Resolution denying plaintiff's appeal and approving of the unlawful variance.

## FIRST CLAIM FOR RELIEF

**VIOLATION OF 42 USC §1983 FOR VIOLATION OF PLAINTIFIF'S 14TH AMENDMENT RIGHTS TO EQUAL PROTECTION UNDER THE LAW RESULTING FROM DEFENDANT CITY'S GRANT OF AN UNLAWFUL VARIANCE TO DFENDANTS BUTLER & HOLDINGS [BY PLAINTIFF AGAINST DEFENDANT CITY OF LOS ANGELES AND ALL NAMED CITY-EMPLOYEE AND OFFICIAL DEFENDANTS]**

50. Plaintiff hereby refers to Paragraphs 1 through 49 of this First Amended Complaint and incorporates the same herein as though plead in full.

51.  Plaintiff affirmatively alleges that at all times herein relevant, in doing the things herein alleged, defendants **CITY**, **WEITZER**, **WYATT**, **REYES**, and **KREKORIAN** were acting under color of state and local law.

52.  Plaintiff is possessed of a constitutional right to the equal enforcement of all zoning laws of the City of Los Angeles, and specifically the right to equal protection and fair enforcement respecting the **CITY'S** enforcement of the MR-1 Zoning Classification, and the attendant laws of the State of California which proscribe and direct how and when zoning variances are to be granted. Plaintiff affirmatively contends that all properties adjacent to his property which are located within the boundaries of the MR-1 Zoning area depicted on Exhibit "A" to this First Amended Complaint are to be accorded equal treatment under the law.

53.  For the reasons stated herein, the defendant **CITY'S** granting of a variance to defendants **HOLDINGS** and **BUTLER** which was unlawful, contrary to state law, lacking in any rational basis, arbitrary, and capricious; and as such, deprived plaintiff of his rights to equal protection under the 14th Amendment to the United States Constitution.

54.  In so doing, plaintiff alleges that defendant **CITY** and the **CITY-DEFENDANTS** acted with an egregious and callous indifference to the law, to their obligations under the law, which actions reflected their affirmative intent and an express purpose to discriminate against plaintiff by *de facto* 'spot zoning' defendant **FIELDS'** property, and thus deny plaintiff the equal protection of the zoning laws. Given the fact that under the proper and lawful application of the zoning classification criteria mandated by Government Code §65906 and the holdings of the California Supreme Court in *Broadway* and *Topanga*, both the **CITY** and the **NON-CITY** defendants had no plausible basis or any degree of discretion whatsoever other than that the variance request could not be approved. Their grant of a variance to defendants **HOLDINGS** and **BUTLER** was without

1  any lawful government justification, and because it constituted such a clear and
2  direct violation of the law, the action of defendant **CITY**, and the conduct of the
3  named defendant **CITY** Officials and Employees constitutes a gross abuse of power
4  and a violation of the public trust.

5      55. As a direct and proximate result of the variance request having been
6  granted, plaintiff was defrauded of income due to the 'fraudulent' nature of the
7  City's zoning plan which this case has exposed.

8      56.  Plaintiff is currently unaware of the exact amount of his damages, but he
9  estimates them to be $10,967,000.   Plaintiff will seek leave of court to amend this
10 First Amended Complaint to allege the exact amount of his damages when the same
11 has been ascertained. This damage claim against defendant **CITY** was set out in
12 Plaintiff's presentations to defendant **WYATT**, the Central Area Planning
13 Commission, and the City Council. Plaintiff is informed and believes that defendant
14 **CITY** rejected his claim in March, 2011, when it denied his appeal.

15     57. In addition, plaintiff has been further damaged in the amount of
16 $342,670.00, which consists of costs of clean-up (at $20 per day), stolen property,
17 repair costs to vehicles, locks, costs of repair damage to plaintiff's building (due to
18 fire started by tresspassers), the cost of construction of 'vandal deterrent'
19 mechanisms, the cost to repair an internal wall damaged by **ZONE** patrons, the cost
20 associated with the recovery of stolen vehicles, lost manufacturing and lost tenant
21 rentals, and the additional expense incurred by plaintiff for providing security to his
22 property through the Business Improvement District. These damages are
23 continuing, and plaintiff reserves the right to amend this First Amended Complaint
24 to add to the foregoing damages as appropriate.

25
26
27
28

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

## SECOND CLAIM FOR RELIEF

### VIOLATION OF 42 USC §1983 FOR VIOLATION OF PLAINTIFIF'S 14TH AMENDMENT RIGHTS TO SUBSTANTIVE DUE PROCESS UNDER THE LAW RESULTING FROM DEFENDANT CITY'S GRANT OF AN UNLAWFUL VARIANCE TO DFENDANTS BUTLER & HOLDINGS [BY PLAINTIFF AGAINST DEFENDANT CITY OF LOS ANGELES AND ALL NAMED CITY-EMPLOYEE AND OFFICIAL DEFENDANTS]

58. Plaintiff hereby refers to paragraphs 1 through 57 of the within First Amended Complaint as though plead in full herein.

59. Plaintiff affirmatively alleges that the subject variance granted to defendants **HOLDINGS** and **BUTLER** was so arbitrary, capricious, irrational, unreasonable, callous, unlawful, and so devoid of any relation to any legitimate governmental interest attending the public health, safety, or general welfare, that the actions of defendant **CITY** and the named defendant **CITY** Employees and Officials violated plaintiff's rights under the Due Process clause of the 14th Amendment.

60. The capriciousness and egregious nature of the abuse of power of the named-**CITY** defendants **WYATT**, **WEITZER**, **REYES**, and **KREKORIAN**, and each of them, is reflected in the fact that instead of equalizing the treatment of properties located within the boundaries of a given zoning classification, the unlawful variance created an artificial difference between plaintiff's property and defendant **FIELDS'** property. All of the **CITY**-Employee and Official defendants orally and openly acknowledged they would not obey the zoning law in order to grant to defendants **HOLDINGS** and **BUTLER** the unlawful variance. Because of the unlawful disparate treatment of their property by the grant of the unlawful variance, defendants **FIELDS, OCCIDENTAL, HOLDINGS,** and **BUTLER**

- 29 -

## THIRD CLAIM FOR RELIEF

**CONSPIRACY TO DEPRIVE PLAINTIFIF OF HIS RIGHTS TO EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS [42 USC §1983 AND 42 USC §1985(3) [BY PLAINTIFF AGAINST ALL DEFENDANTS EXCEPT DEFENDANT CITY OF LOS ANGELES]**

63.  Plaintiff hereby refers to paragraphs 1 through 62 of this First Amended Complaint and incorporates the same herein by reference as though plead in full.

64.  "Section 1985 proscribes conspiracies to interfere with certain civil rights." *Karim-Panahi vs. L.A. Police Dep't* (9th Cir. 1988) 839 F. 2d 621, 626. Under §1985(3), a party has a right of action against "two or more persons in any State or Territory [who] conspire. . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

65.  Plaintiff alleges that **CITY**-defendants **WEITZER, WYATT, REYES, KREKORIAN,** willfully conspired among themselves and with non-**CITY** defendants **FIELDS, OCCIDENTAL, HOLDINGS,** and **BUTLER** to deprive plaintiff of the equal protection of the laws, substantive due process, and the equal privileges and immunities under the laws, all as more fully detailed below.

66.  Plaintiff alleges that the **CITY** and non-**CITY** defendants shared the common unconstitutional goal and objective which was to have the **CITY** act under color of state and local law to grant, under a false pretext, an unlawful variance to defendants **HOLDINGS** and **BUTLER** so they could operate their 'sex encounter establishment' on the property owned by defendant **FIELDS** and leased to defendant **OCCIDENTAL.**  For the reasons noted above, the grant of the unlawful variance to defendants **HOLDINGS** and **BUTLER** had the effect of denying plaintiff the equal protection of the laws and arbitrarily and unlawfully granting said

1  were able to profit financially in the form of being able to collect enormously

2  higher rents payable on commercial rather than industrial property.

3       61. Plaintiff further alleges that the callous indifference to plaintiff's rights

4  exhibited by defendant **REYES** is evidenced by the fact that said defendant was

5  fully briefed by the Planning Department and the City Attorney in 2007, in

6  connection with the settlement of a lawsuit brought by Philip Anaya against the

7  City of Los Angeles and IMT Development Fund, IX, (LA Superior Court Case No.

8  BS 099892) which successfully challenged a variance granted by the City to a

9  developer on the grounds similar to the grounds asserted herein. . . that a variance

10  was improvidently granted, which violated *Topanga* and Government Code §65906,

11  and the state and local protocol to favor a special interest constituent. It is therefore

12  reasonable to infer that when defendant **REYES** considered plaintiff's appeal, he

13  was fully conversant with the rules attendant to the grant of variances; but merely to

14  please defendant **WEITZER**, defendant **REYES** knowingly chose to ignore what

15  he knew were the rules and the law. As such, he knowingly committed an unlawful

16  act which, by definition, was outside the scope of his authority when he moved to

17  facilitate the grant of the unlawful variance to defendants **HOLDING** and

18  **BUTLER**.

19       62. As a direct and proximate result of the conduct of the defendants, and

20  each of them, plaintiff has been damaged in the amounts and in the manner set out

21  in Paragraph 56 and 57.

22

23

24

25

26

27

28

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

1 | defendants a special privilege otherwise not authorized or allowed under the laws of
2 | the State of California or the City of Los Angeles.

3 |       67  In furtherance of the alleged conspiracy, each of the defendants
4 | committed the following acts:

5 |       a. Defendant **WEITZER**: Met several times beginning in 1993, with a
6 | succession of operators with purpose of manipulating the system so as to be able to
7 | 'ram' through the illegal variance grant. Thereafter, defendant **WEITZER**
8 | personally lobbied with defendants **WYATT**, **REYES**, and **KREKORIAN** for the
9 | express purpose of obtaining the grant of an unlawful variance, even though each
10 | **CITY**-Employee and Official defendant knew (i) there was no legitimate
11 | government purpose to be served by granting the variance; (ii) granting of the
12 | variance was not authorized or lawful under Government Code §65906, or the
13 | holdings or *Topanga*, *Broadway,* or the ruling of the Superior Court in *Philip Anaya*
14 | *vs. City of Los Angeles* (BS 099892) decided in September, 2006; (iii) granting the
15 | variance would give all of the non-**CITY** defendants a large financial windfall and a
16 | special privilege, but denying plaintiff the equal protection of the laws and his
17 | rights to substantive due process ; (iv) granting of a variance is impermissible where
18 | the proposed use is not specifically authorized under the MR-1 Zoning
19 | classification; (v) granting a variance would create a financial bonanza for the non-
20 | **CITY** defendants while the plaintiff lost income; (vi) the City finances would be
21 | greatly put at risk.

22 |       b. Defendant **WYATT**:  Wrongly acceded to defendant **WEITZER'S**
23 | commands; she affirmatively violated the law and granted the subject unlawful
24 | despite knowing it was wrong and unsupportable as a matter of law;

25 |       c. Defendants **REYES** and **KREKORIAN**: In joining the conspirators
26 | **WEITZER, HOLDINGS, BUTLER**, and **OCCIDENTAL** to act under color of
27 | law unlawfully to deprive plaintiff of his protection against conspirators and

28 |

- 32 -

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

continuing his property's degradation, violated also their oaths of office to not violate the law;

   d. Defendants **HOLDINGS** and **BUTLER**: From making a belated application for an unlawful variance instead of seeking a lawful place for their enterprise, they conspired with **OCCIDENTAL** using a false purpose and use for the property, engineered a cabal with defendant **WEITZER** after the time given them to vacate had expired, and fabricated "excuses' to justify their variance application which were obviously not legally pertinent. They enlisted their cabal to push through this scheme, as evidence will prove.

   e. Defendants **OCCIDENTAL** and **FIELDS**: By supporting the application of defendant **HOLDINGS** and **BUTLER** for an unlawful variance, both orally and in writing, and in permitting said defendants to represent them in connection with the application and in all other matters attendant thereto.

   68  As a direct and proximate result of the conduct of the defendants, and each of them, as alleged herein, the plaintiff has been damaged in the manner and in the sum alleged in paragraphs 56 and 57.

## FOURTH CLAIM FOR RELIEF
### DECLARATORY RELIEF
### [BY PLAINTIFF AGAINST DEFENDANT CITY OF LOS ANGELES AND ALL NAMED CITY-EMPLOYEE AND OFFICIAL DEFENDANTS]

   69  Plaintiff hereby refers to paragraphs 1 through  68 of the within complaint and incorporates the same herein by reference as though plead in full.

   70.  An actual and present controversy now exists as between plaintiff and defendant **CITY** and defendant **CITY**-Employees and Officials pertaining to the rights, duties, and obligations each owes the other, as set forth herein. Pursuant to 28 USC §2201-§2202, plaintiff is entitled to judgment declaring that in engaging in the foregoing acts, as alleged, defendant **CITY**, and defendants **WEITZER**,

- 33 -

1   **WYATT, REYES**, and **KREKORIAN** have violated his rights to equal protection
2   and substantive due process; and that defendant **CITY** employees and officials
3   acted outside the scope of their prescribed duties and responsibilities.

### FIFTH CLAIM FOR RELIEF

**WRIT OF MANDATE – CALIFORNIA CODE OF CIVIL PROCEDURE**

**SECTION 1094.5**

**[BY PLAINTIFF AGAINST DEFENDANT CITY OF LOS ANGELES, AND**

**DEFENDANTS FIELDS, HOLDINGS, AND BUTLER]**

9      71.Plaintiff hereby refers to paragraphs 1 through 70 of the within First
10   Amended Complaint and incorporates the same herein by reference as though plead
11   in full.

12      72. By engaging in the foregoing acts of approving the unlalwful variance,
13   defendant **CITY** proceeded without and in excess of its lawful jurisdiction, abused
14   its discretion, and acted prejudicially, arbitrarily, and capriciously.

15      73. Plaintiff has exhausted all of his required remedies, or is otherwise
16   excused from exhausting his remedies.

17      74. Plaintiff has no administrative remedy or other plain, speedy, or adequate
18   remedy in the ordinary course of law; and will suffer irreparable injury and
19   damages if the decision of defendant **CITY** to grant the unlawful variance are
20   allowed to stand.

21      75. Because of the wrongful acts of defendant **CITY**, plaintiff has incurred
22   and will continue to incur attorney's fees and costs in bringing this action as a
23   private attorney general pursuant to Code of Civil Procedure §1021.5 to vindicate
24   his interests and those of the taxpayers of the City of Los Angeles in the proper
25   enforcement and implementation of the zoning and land use laws of the City of Los
26   Angeles and State of California.

27

28

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

# PRAYER FOR RELIEF

Plaintiff respectfully prays for relief as follows:

1. For a judgment declaring that (a) the award of the variance to defendants **HOLDINGS** and **BUTLER** was void and invalid in that said actions by defendant **CITY** and the other named defendants were in violation plaintiff's rights under the Due Process and Equal Protection clauses of the United States Constitution, of Government Code §65906, §562 of the Charter of the City of Los Angeles, §12.27 of the Los Angeles Municipal Code, *Topanga Association vs. County of Los Angeles* (1974) 11 Cal. 3d 596, among others; (b) that no variance in connection with the use of the subject property located by 1037 North Sycamore Avenue, Los Angeles, could or should have been granted;

2. That the Court impose on defendant **CITY** the duty to amend its practices regarding the issuance of variances to assure all properties lying within the zoning sub-area occupied by plaintiff's property are subjected to the equal protection of the law;

3. That the Court grant preliminary and permanent injunctive relief restraining defendants from depriving plaintiff and others, similarly situated, from honest services;

4. That the Court enter an Order directing the current non-conforming business which is being operated by defendants HOLDINGS and BUTLER at the 1037 North Sycamore Avenue property cease, and be directed to remove itself from the subject property to a location whose zoning contemplates and permits such use;

5. For compensatory damages to be paid to plaintiff apportioned as the defendants for the financial harm suffered by plaintiff on account of the regular and constitutional torts and other wrongful acts alleged herein;

6. For an order requiring the defendants to pay plaintiff's costs and attorney's fees incurred herein; and

- 35 -

7. For such other and further relief as this Court may deem just and proper.

**DATED**: November 17, 2011

_J.H. McQUISTON_

**J.H. McQUISTON**
Plaintiff, *pro se*

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

# SEC. 12.17.5. "MR1" RESTRICTED INDUSTRIAL ZONE.

**(Amended by Ord. No. 148,969, Eff. 12/16/76.)**

The following purpose and regulations shall apply to "**MR1**" Restricted Industrial Zone:

**A.    Purpose:**

1.    *To protect industrial land for industrial use, and prohibit unrelated commercial and other non-industrial uses.*

2.    To provide a reasonable range or interim uses in this zone, so that land owners may receive income from temporary use, while the industrial land reserve is being protected for future growth.

3.    To upgrade industrial development standards,

a.    so that industry will be a better neighbor to residences

b.    *to protect industrial investment against incompatible residential, commercial and industrial uses*, and

c.    to prevent future industrial blight.

4.    *To preserve industrial land for light industrial uses and to provide for non- retail businesses which enhance the City's employment base.* **(Added by Ord. No. 169,366, Eff. 4/1/94.)**

5.    *To reflect and accommodate the shift in industrial land use from traditional industrial activity to uses such as those involving record management, Research and Development, information processing, electronic technology, and medical research*. **(Added by Ord. No. 169,366, Eff. 4/1/94.)**

**B.    Use**. **(Amended by Ord. No. 148,969, Eff. 12/16/76.)** *No building, structure or land shall be used and no building or structure shall be erected, structurally altered, enlarged or maintained, except for the following uses, or where a "Supplemental Use District" is created by the provisions of Article 3 of this chapter, for such uses as may be permitted therein*.

1.    Any use specified in Section 12.17.1-A,2, as first permitted in the CM Zone provided that all regulations of said zone are complied with.

2.    **(Amended by Ord. No. 156,994, Eff. 9/25/82.)** Any use permitted in the C2 Commercial Zone, provided that these uses are conducted in accordance with all building enclosure and fence enclosure limitations of said C2 zone, and further provided:

(a)    Any such use is devoted primarily to the manufacturing of products, or assembling, compounding, processing or treating of materials and that all retail business conducted in connection with such use is only incidental to the main use; or

(b)    Any such use is devoted primarily to the development of software and other computer or media-related products or services, or **(New Sub-para. (b) Added by Ord. No. 172,106, Eff. 8/14/98.)**

(c)    Any such use is conducted only as an accessory use to the main  use, and provides services for those persons employed on the premises. **(Sub-para. (b) Renumbered Sub-para. (c) by Ord. No. 172,106, Eff. 8/14/98.)**



EXHIBIT E

3.     The following uses:

a.     Farming, nurseries, aviaries and apiaries. **(Amended by Ord. No. 181,188, Eff. 7/18/10.)**

b.     Bank.

c.     Clinic.

d.     Laboratory or research and development center.

e.     Offices, accessory to the primary industrial use of the lot, and showrooms for products produced on the premises; provided that the total floor area of such offices and showrooms does not exceed the floor area of the primary industrial use, and that all of the merchandise sold during each calendar month is sold at wholesale. **(Amended by Ord. No. 169,366, Eff. 4/1/94.)**

f.     Printing and publishing, wholesale.

g.     Recreation facility, open or enclosed, as an accessory use incidental to the primary industrial use of the lot, provided that such recreation facility shall not exceed 10 percent of the total lot area. **(Amended by Ord. No. 159,916, Eff. 7/7/85.)**

h.     Restaurant (including cafe), **_as an accessory use_** incidental to the primary industrial use of the lot and for the exclusive use of persons employed on such lot and provided that there shall be no outdoor signs advertising such restaurant. **(Amended by Ord. No. 159,916, Eff. 7/7/85.)**

(i)     Corporate headquarters, record-keeping and computer support facilities for the processing of retrievable information and systems control. **(Added by Ord. No. 169,366, Eff. 4/1/94.)**

(j)     Office buildings if used only for offices of industrial firms, industrial engineering firms, and other professional, administrative, and clerical services needed by industries in the area. **(Added by Ord. No. 169,366, Eff. 4/1/94.)**

(k)     Facilities for the development and/or production and manufacture of computer and media-related products and services, including hardware. **(Added by Ord. No. 172,106, Eff. 8/14/98.)**

(l)     Wireless antennas, including the associated equipment cabinets, located on the rooftops of buildings when established in conformance with the standards contained in Section 12.21 A.21. of this Code, and which are not located within a scenic parkway specific plan, scenic corridor specific plan, or a roadway designated as a scenic highway within a specific plan area; or on the rooftops of buildings that are designated on the National Register of Historic Places, including Contributing Buildings in National Register Historic Districts, the California Register of Historic Resources, the City of Los Angeles List of Historic-Cultural Monuments, or a Contributing Structure located in an Historic Preservation Overlay Zone (HPOZ) that has been established pursuant to Section 12.20.3 of this Code. **(Added by Ord. No. 177,120, Eff. 12/26/05.)**

4.     The following uses when conducted wholly within a completely enclosed building, except for incidental storage, and conducted in accordance with the limitations hereafter specified:

a.     The manufacturing, compounding, processing or treating of such products as drugs, pharmaceuticals, and perfumed toilet soap (no refining or rendering of fats or oils).

b.    The manufacturing, compounding, assembling, or treating of articles or merchandise from the following previously prepared materials, cork, feather, fibre, hair, horn, tobacco, and paint (not employing a boiling process).

c.    The manufacturing of ceramic products, provided that there is no pulverizing of clay.

d.    The manufacturing of concrete or cement products.

e.    The manufacturing and maintenance of electrical and neon signs, billboards, commercial advertising structures, light sheet metal products, including heating and ventilating ducts and equipment, cornices, eaves and the like.

f.    The manufacturing of food products (except fish products, sauerkraut, vinegar, yeast, or the rendering or refining of fats and oils), provided that no noxious or offensive odors are permitted to emanate from the premises.

g.    The manufacture of machine belting from previously tanned leather.

h.    The manufacturing of musical instruments, toys, novelties, and metal stamps.

i.    The manufacturing of plastic, rubber or synthetic rubber products,  such as washers, gloves, bathing caps, tableware, buttons, stamps, mats, and the like, not involving the use of rolling mills of more than 60 inches in length, or the use of Banbury Mills.

j.    Blacksmith shops and machine shops not involving the use of drop hammers, automatic screw machines, or punch presses with a rated capacity of over 20 tons; provided, that punch presses with a rated capacity of over 20 tons may be used, if they are located within the building and are installed and cushioned in accordance with a plan which the Department of Building and Safety has determined will satisfactorily prevent the emanation of objectionable noise and vibration to adjoining property.

k.    Distribution, plants, parcel delivery service, ice and cold storage plants, a bottling plants.

l.    Laundry, cleaning and dyeing works, and carpet and rug cleaning  plants.

m.    **(None)**

n.    Truck repairing or overhauling; wholesale automobile assembling, rebuilding or conditioning; wholesale rebuilding of automobile parts accessories or assemblies; tire retreading or recapping; battery manufacturing; and the like.

o.    Veterinary, dog and cat hospitals, kennels, or facilities for breeding and boarding of animals (no outside keeping of animals - no open runs).  In no case, however, shall any new kennel or animal breeding and boarding facility be constructed where any portion of the parcel is located within 500 feet of a residential zone without obtaining a conditional use permit pursuant to Section 12.24 of this Code. **(Amended by Ord. No. 169,013, Eff. 9/28/93.)**

p.    Woodworking shops and sash and door manufacturing including only incidental mill work; provided that if a planner, router, sticker or moulder is maintained, all doors and windows in the outside walls of the room in which said machinery is located, shall be kept closed while said machinery is in use.

q.    Cannery or bottling plant (except fish products or sauerkraut). **(Amended by Ord. No. 148,969. Eff. 12/16/76.)**

r.    Cigarette factory. **(Amended by Ord. No. 148,969, Eff. 12/16/76.)**

s.  Electroplating works. **(Amended by Ord. No. 148,969, Eff. 12/16/76.)**

t.  Furniture manufacturing (only incidental mill work - planers, routers, stickers, and moulders operated in room with doors and windows closed). **(Amended by Ord. No. 148,969, Eff. 12/16/76.)**

u.  **(None)**

v.  Heat treating, case hardening, tempering, apply solid film lubricants and similar processing of small parts used in manufacturing of mechanical apparatus, devices or equipment. **(Amended by Ord. No. 148.969, Eff. 12/16/76.)**

w.  Metal spinning. **(Amended by Ord. No. 148,969, Eff. 12/16/76.)**

5.  The following uses when conducted wholly within a completely enclosed building or within an area enclosed on all sides with a solid wall or solid fence not less than six feet in height, when no material or equipment is stored to a height greater than that of the enclosing wall or fence and the wall or fence is maintained as provided in Section 12.21-A.9:

a.  Building material sales yard, including the sale of rock, sand, gravel and the like as an incidental part of the main business, but excluding concrete mixing.

b.  Contractor's equipment storage yard or plant.

c.  Draying, freighting, or trucking yard or terminal.

d.  Lumber yard, retail, including only incidental mill work; provided that any planer, router, sticker or moulder used for such mill work shall be maintained in a completely enclosed building or room within a building, and that all doors and windows in the outside walls of such building or room shall be kept closed while said machinery is in use.

e.  ***Motion picture, television, video and other media production, with outdoor sets***. **(Amended by Ord. No. 172,106, Eff. 8/14/98.)**

f.  Open storage, not including the storage of impounded, abandoned, partially dismantled, obsolete or wrecked automobiles or similar equipment, or salvage, junk or scrap metal yards, provided no material or equipment is stored to a height greater than that of the wall or fence enclosing the storage area.

g.  Parking of trucks or buses.

h.  Public utility service yard or electrical receiving or transforming station.

i.  Small boat building, except shipbuilding.

6.  Other uses similar to the above, as provided in Section 12.21-A.2 but not including uses which are or may become obnoxious or offensive by reason of emission of odor, dust, smoke, noise, gas, fumes, cinders, vibration, refuse matter or water-carried waste, as determined by a Zoning Administrator.

7.  Conditional uses enumerated in Section 12.24 when the location is approved pursuant to the provisions of said section.

8.  Public parking areas and parking buildings as primary or accessory uses, and loading space required or provided in connection with the permitted uses, as provided in Section 12.21-A and 12.21-C.6 of this Code.

9.  Uses customarily incident to any of the above uses, and accessory buildings when located on the same lot, provided:

a.  A dwelling shall be considered to be a permissible accessory building only when it is designed for and used solely by a watchman or caretaker (including his family) of an industrial development or of a permitted use which requires 24-hour supervision and is located on the same lot with such development or use.

b.  **(Amended by Ord. No. 162,335, Eff. 6/6/87.)** Open storage of materials and equipment, including used materials and equipment, shall be permitted only within an area enclosed on all sides with a solid wall or fence not less than six feet in height. No material or equipment shall be stored to a height greater than that of the wall or fence enclosing the storage area, except that storage in lumber yards may be at a height greater than said wall or fence.

The phrase "**used materials and equipment**" includes vehicles, boats, or airplanes which are inoperable, wrecked, damaged or unlicensed i.e. not currently licensed by the Department of Motor Vehicles.

c.  Signs or advertising structures shall indicate only the name, occupation, or nature of activities conducted, services offered or the product sold or manufactured on the premises.

d.  Open storage of materials and equipment, including used materials and equipment existing on a lot when it is zoned "MR," shall be enclosed as described herein. It shall be completely enclosed  within a building or within an area enclosed on all sides with a solid wall or solid fence of a height sufficient to screen the use from public view, but in no event less than six feet in height within one year after a lot is zoned MR. The phrase "**used materials and equipment**" includes vehicles, boats, or airplanes which are inoperable, wrecked, damaged or unlicensed, i.e. not currently licensed by the Department of Motor Vehicles. **(Amended by Ord. No. 162,335, Eff. 6/6/87.)**

**C.  Limitations. (Amended by Ord. No. 146,030, Eff. 7/11/74.)** All required buildings and enclosing walls or fences shall be so constructed, the machinery and equipment shall be so installed and maintained, and the activity shall be so conducted, that all noise, vibration, dust, odor and all other objectionable factors, shall be confined or reduced to the extent that no annoyance or injury will result to persons residing in the vicinity.

Whenever there is any difficulty in determining the application of these provisions to any specific case, the Department of Building and Safety shall make such determinations.

**D.  Area. (Amended by Ord. No. 148,969, Eff. 12/16/76.)** No building or structure nor the enlargement of any building or structure shall be hereafter erected or maintained unless the following yards and lot areas are provided and maintained in connection with such building, structure or enlargement:

1.  **Front Yard** – On all lots 100 feet in depth or less, 5 feet; on all lots in excess of 100 feet in depth, 15 feet. All front yards shall be suitably landscaped and maintained except for necessary driveways and walkways.

2.  **Side Yards** – Side yards conforming to the requirements of the "R4" Zone (Section 12.11-C.2) shall be provided and maintained in connection with buildings erected and used principally for residential purposes.

3.  **Rear Yard** – No rear yard shall be required for buildings erected and used exclusively for commercial or industrial purposes, a rear yard conforming to the requirements of the "R4" Zone (Section 12.11-C.3) shall be provided and maintained at the floor level of the first story used in whole or in part for residential purposes.

4.   **Lot Area** – The lot area required of the "R4" Zone (Section 12.11-C.4) shall apply to buildings erected and used exclusively for dwelling purposes. For buildings other than those erected and used exclusively for dwelling purposes such requirements shall apply only to that portion of a building used for dwelling purposes.

5.   **Loading Space** – As required by Section 12.21-C.6. Exceptions to area regulations are provided for in Section 12.22-C.

**E.   Fence Modification. (Added by Ord. No. 146,030, Eff. 7/11/74.)**

1.   **Authority of Director** – The Director of Planning or his authorized     representative, upon application, may defer the wall or fence requirements of this section, for portions of walls or fences, in the following instances:

a.  Where adjoining property is located in the M2 or M3 Zone and is developed with any of the uses first listed in Section 12.19-A or Section 12.20-A.

b.   Where substantial fences, walls, buildings or geographic features are located on the subject property or on adjacent property and serve to enclose the subject use as well or more effectively than the wall or fence required by this section.

2.   **Compliance** – Should the use, fence, wall or building providing justification for such modification be removed, such wall or fence shall be provided in compliance with this section within six months from the date of such removal.

**F.   Restriction. (Amended by Ord. No. 173,268, Eff. 7/1/00, Oper. 7/1/00.)**  For any lot designated as Public, Quasi-Public, Public/Quasi-Public Use, Other Public, or Open Space on the land use map of the applicable community or district plan; any lot shown on the map as having existing lakes, waterways, reservoirs, debris basins, or similar facilities; any lot shown on the map as the location of a freeway right-of-way; and any property annexed to the City of Los Angeles where a plan amendment was not adopted as part of the annexation proceedings:

Any of the uses permitted by Subsection B of this section shall require prior approval in accordance with the provisions of Section 12.24.1 of this Code.



# MEMBERSHIP APPLICATION

**Membership Card**
*Valid upon payment of membership dues*

☐ Card required for admission
☐ Positive ID required at all times
This card remains the property of The Zone®
and must be surrendered upon request.



A10318N

I hereby apply for membership to The Zone. I understand that The Zone is a private club for gay men who wish to engage in intimate social and sexual contact. I am not offended by gay sexual conduct or contact. I understand that I may witness graphic gay male sex acts, including masturbation, oral sex, and sex including multiple partners; I am not and would not be offended by viewing such conduct. I also understand that other patrons may touch me without my prior consent; I would not be offended by such conduct. I also understand that sexual activity may occur anywhere inside the club; I would not be offended by such conduct. I further understand that the Club prohibits alcohol or drug use, prohibits unsafe sex (oral or anal without a condom) and prohibits loitering outside or near The Zone. A violation of club rules will lead to immediate removal and the permanent revocation of membership. I hereby agree to abide by these and other club rules that the management, in its discretion, may decide to promulgate. Any Membership Card issued remains the property of The Zone and must be relinquished upon demand.

I further agree to pay any Membership Fee, which is solely for the purpose of securing membership at The Zone. I understand that a separate fee will be charged for each admission to the Club, and that I may not leave the Club and return unless I pay a separate admission fee.

I hereby represent that I am at least 18 years of age, and will be able to show valid ID whenever asked by The Zone staff.

_____          _____
Dated                                                       Applicant Signature



**PROOF OF SERVICE**

I, **NOEL WEISS**, hereby declare as follows:

1. I am an attorney at law, duly licensed to practice law before the bar of the State of California and before this Court. I make this Declaration in support of the within Proof of Service. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under this practice, it is customary for all correspondence and postage to be deposited in the US Mails on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date is more than one date after the date of mailing.

2. On November 17, 2011, I served the within Document on the parties who have appeared in this action as follows:

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGES & WRIT OF MANDATE**

**XX** By Mail: By placing the document(s) listed above in a sealed envelope with Postage fully prepaid, in the United States Mail at Los Angeles, California, addressed as set forth on the attached service list, to each of the persons named thereon.

___ By Email: By transmitting the document(s) listed above via email to the person(s) names on the attached Service List, to each of the persons named, at the email addresses noted thereon, and receiving confirmed transmission reports indicating that the documents were successfully transmitted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _17_ day of November, 2011. at Marina del Rey, California 90292

NOEL WEISS

Case No. CV11-05149-DSF(MSW)
First Amended Complaint

## ATTACHMENT TO PROOF OF SERVICE

**TAYO A. POPOOLA, Deputy City Attorney**
Office of Los Angeles City Attorney
701 City Hall East, 200 North Main Street
Los Angeles, California 90012
Email: tayo.popoola@lacity.org
*Counsel for Defendant City of Los Angeles*
*and Defendants Renee Weitzer, Linn K..Wyatt*
*Ed P. Reyes, and Paul Krekorian*


**DARIN MARGULES**
Law Office of Darin Margules and Associates
17835 Ventura Blvd., Suite 104
Encino, California 91316
Email: darin@marguleslawfirm.com
*Counsel for Defendant Shaun Butler*

**ALAN M. MIRMAN**
Mirman, Bubman & Nahmias, LLP
21860 Burbank Blvd., Suite 360
Woodland Hills, California 91367
Email: amirman@mbnlawyers.com
*Counsel for Defendant Margaret C. Fields*

- 38 -